**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

VIVEK SHAH,

        Plaintiff,

        v.

JPMORGAN CHASE BANK, N.A., et al.,

        Defendant.

Case No. 20-cv-03355

Honorable Gary S. Feinerman

Magistrate Judge: Honorable Young B. Kim

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.    Introduction ................................................................................................................... 1

II.   Factual Background.......................................................................................................... 2

III.  Legal Standard................................................................................................................. 3

IV.  Argument.......................................................................................................................... 4

    A.      Plaintiff Fails To State A Claim For RICO Conspiracy. .................................................. 4

    B.      Plaintiff Fails To State A Disparate Impact Claim Under ECOA.................................... 7

        1.     Chase's Actual Policies Do Not Match Plaintiff's Allegations.................................... 7

        2.     Plaintiff Admits Chase Did Business with Him, Post-Felony, Demonstrating Plaintiff Cannot State a Claim. .................................................................................................. 9

        3.     Plaintiff Fails To Allege He Is Part Of A Class Adversely Impacted. ...................... 10

    C.      Plaintiff Fails to State a Violation of ECOA Based on Chase's Alleged Failure to Provide a Statement of Reasons for Terminating the Relationship. .............................. 11

    D.      Plaintiff Fails To State A Claim Under The Illinois Consumer Fraud And Deceptive Business Practices Act. .................................................................................................. 14

V.   Conclusion...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................3, 4, 8

*ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*,
  192 F. Supp. 3d 943 (N.D. Ill. 2016) .........................................................................................15

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005)..........................................................................................................15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................................3, 8

*Bell Enterprises Venture v. Santanna Natural Gas Corp.*,
  No. 01 C 2212, 2002 WL 31269437 (N.D. Ill. Oct. 9, 2002)......................................................6

*Carmona v. Professionals, Inc.*,
  No. 15 C 8352, 2017 WL 1365590 (N.D. Ill. Apr. 14, 2017)......................................................9

*Chicago Police Sergeants Ass'n v. City of Chicago*,
  No. 08-cv-4214, 2011 WL 2637203 (N.D. Ill. July 6, 2011) ......................................................9

*Cleveland v. United States*,
  531 U.S. 12 (2000).......................................................................................................................6

*Davis v. G.N. Mortg. Corp.*,
  396 F.3d 869 (7th Cir. 2005) .....................................................................................................15

*Davis v. SPSS, Inc.*,
  431 F. Supp. 2d 823 (N.D. Ill. 2006) ...........................................................................................8

*Emery v. Am. Gen. Fin., Inc.*,
  952 F. Supp. 602 (N.D. Ill. 1997), *aff'd*, 134 F.3d 1321 (7th Cir. 1998) ...................................5

*Flores v. Hartford Police Dep't.*,
  No. H-79-411, 1981 WL 27040 (D. Conn., Feb. 17, 1981).......................................................10

*Forrester v. White*,
  846 F.2d 29 (7th Cir. 1988) .......................................................................................................11

*Grant v. World Class Mortg. Corp.*,
  No. 89 C 3824, 1990 WL 19466 (N.D. Ill. Feb. 20, 1990).......................................................12

*Haddad v. Am. Home Mortg. Servicing, Inc.*,
   No. 18 C 00731, 2019 WL 1425835 (N.D. Ill. Mar. 29, 2019) ................................................6

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) .............................................................................................4, 7

*Higgins v. J.C. Penney, Inc.*,
   630 F. Supp. 722 (E.D. Mo. 1986)........................................................................................13

*Horist v. Sudler & Co.*,
   941 F.3d 274 (7th Cir. 2019) ...............................................................................................14

*King v. Police & Fire Fed. Credit Union*,
   No. 16-6414, 2019 WL 2226049 (E.D. Pa. May 22, 2019)....................................................12

*Latour v. Deseret First Credit Union*,
   No. 2:19-cv-00450-JNP-PMW, 2020 WL 1326283 (D. Utah Feb. 26, 2020),
   *report and recommendation adopted*, No. 2:19-cv-450-JNP-PMW, 2020 WL
   1325239 (D. Utah Mar. 20, 2020).....................................................................................11, 12

*Lentz v. Pan Am. Corp.*,
   Civ. A. No. 90-2181, 1991 WL 240739 (E.D. Penn. Nov. 12, 1991).......................................6

*M & T Mortg. Corp. v. White*,
   736 F. Supp. 2d 538 (E.D.N.Y. 2010) ...................................................................................10

*Massey v. Merrill Lynch & Co., Inc.*,
   464 F.3d 642 (7th Cir. 2006) ................................................................................................10

*Menominee Indian Tribe of Wisconsin v. Thompson*,
   161 F.3d 449 (7th Cir. 1998) ................................................................................................10

*Menzies v. Seyfarth Shaw LLP*,
   197 F. Supp. 3d 1076 (N.D. Ill. 2016) .................................................................................4, 6

*Moore v. Fid. Fin. Servs., Inc.*,
   949 F. Supp. 673 (N.D. Ill. 1997).............................................................................................5

*Payne v. Diner's Club Int'l*,
   696 F. Supp. 1153 (S.D. Ohio 1988) .....................................................................................13

*Phillips v. Prudential Ins. Co. of America*,
   714 F.3d 1017 (7th Cir. 2013) .................................................................................................7

*Porter v. Fairbanks Capital Corp.*,
   No. 01 C 9106, 2003 WL 21210115 (N.D. Ill. May 21, 2003) ................................................8

*Powell v. Pentagon Fed. Credit Union*,
  No. 10 CV 785, 2010 WL 3732195 (N.D. Ill. Sept. 17, 2010)...............................................15

*Regions Bank v. Legal Outsource PA*,
  936 F.3d 1184 (11th Cir. 2019) ...........................................................................................11

*Richmond v. Nationwide Cassel L.P.*,
  52 F.3d 640 (7th Cir. 1995) ...................................................................................................5

*Rocha v. FedEx Corp.*,
  15 F. Supp. 3d 796 (N.D. Ill. 2014) ...................................................................................4, 5

*Ruiz v. Samuel I. White, P.C.*,
  No. 1:09CV688, 2009 WL 10687930 (E.D. Va. Nov. 9, 2009) ............................................13

*Saunders v. Michigan Ave. Nat'l Bank*,
  662 N.E.2d 602 (Ill. App. Ct. 1996) ....................................................................................14

*Steele v. GE Money Bank*,
  No. 08 C 1880, 2009 WL 393860 (N.D. Ill. Feb. 17, 2009).................................................7

*Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*,
  633 F. Supp. 2d 610 (N.D. Ill. 2009) ...................................................................................14

*Wright v. SunTrust Bank*,
  No. 1:08cv568 (JCC), 2008 WL 3106884 (E.D. Va. Aug. 4, 2008) ......................................13

**Statutes**

Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(1) ......................................................... *passim*

Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(2)............................................................1, 13

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp.
  Stat. Ann. 505/2 ...................................................................................................1, 2, 14, 15

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d)......................1, 4, 5, 6

**Other Authorities**

Justice Statistics, *Prison and Jail Incarceration Rates Decreased by More Than
  10% From 2007 to 2017*,
  https://www.bjs.gov/content/pub/press/p17ji17pr.pdf............................................................11

## I.     INTRODUCTION

Plaintiff Vivek Shah ("Plaintiff") brings this lawsuit based on a purely speculative allegation, which is contradicted by documents incorporated by reference in his Amended Complaint, that Defendant JPMorgan Chase Bank, N.A. ("Chase") "maintains and enforces policies of automatically excluding any person with a . . . felony conviction from accessing its checking and credit products." Am. Compl. ¶ 1. Plaintiff claims this alleged policy disparately impacts "people of color" and Defendant's alleged actions in connection with the policy constitute (1) a conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d) (Count I); (2) disparate impact in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a)(1) (Count II); (3) a violation of ECOA for failure to provide a statement of reasons for the denial of credit, 15 U.S.C. § 1691(d)(2) (Count III); and (4) a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 (Count IV). Plaintiff's claims fail as a matter of law.

Plaintiff's RICO claim, set forth in Count I, fails for two reasons. To establish a prima facie case, Plaintiff must, but does not, allege the RICO defendant conspired to conduct an enterprise which is separate and distinct from its employees and its own corporate affairs. Plaintiff also fails to allege a conspiracy to induce Plaintiff to provide any money or thing of monetizable value to Chase.

In Count II, Plaintiff alleges Chase violated ECOA by maintaining and applying to him an unsubstantiated, purported policy of not doing business with consumers with felony convictions. Foundationally, Chase *does* do business with consumers convicted of felonies, as shown by policies governing the management of its relationships with incarcerated persons (that are incorporated by reference, by Plaintiff, into the Amended Complaint). Indeed, Plaintiff's speculative allegation Defendant "automatically" denies credit to people with felony convictions

1

is belied by Plaintiff's own allegations that Chase provided him with credit multiple times after his felony conviction. Yet even if Chase had a policy excluding felons, which it does not, Plaintiff's disparate impact claim fails because the Amended Complaint does not allege Plaintiff is a member of a group adversely impacted by the alleged policy.

In Count III, Plaintiff asserts Chase violated ECOA by failing to provide a statement of reasons for adverse action based on his Paycheck Protection Program application, his Chase Credit Card application, and his Amazon Card. Count III also fails. Plaintiff pleads Chase did provide reasons for the denial of his Paycheck Protection Program loan, Chase Credit Card application, and reasons for closing his Amazon Card.

Finally, Plaintiff's ICFA claim, set forth in Count IV, fails. It is clear from Chase's policies discussed above and incorporated by reference into the Amended Complaint that Chase does *not* have a so-called "anti-felon" policy, and since any deception or unfairness Plaintiff alleges is based upon this non-existent policy, his claim necessarily fails. Plaintiff's unfairness claim under ICFA further fails because he does not allege an immoral, unethical, oppressive, or unscrupulous practice. Plaintiff's claim for deception under ICFA likewise fails because he has not pleaded Chase's allegedly deceptive acts proximately caused any damages to him.

## II.     FACTUAL BACKGROUND

Plaintiff was arrested in 2012 "by the FBI for Mailing Threatening Communications," convicted of a felony, and sentenced to 87 months in prison. Am. Compl. ¶ 20. In a plea agreement, Plaintiff admitted he "mailed a series of letters . . . entitled 'Extortion Notice,' [that] contained an express threat of death to a member of the recipient's family unless the recipient paid a sum of money." Plea Agreement, *United States v. Shah*, No. 5:12-CR-00172, (S.D. W.Va. May 9, 2013), ECF No. 85 at 9, attached as Exhibit 1. "In order to carry out this extortion scheme, Mr. Shah used false identities and aliases to purchase and activate various prepaid access device cards."

2

*Id*. Plaintiff demanded up to $35 million and sent "wiring instructions for an offshore account into which he intended for [the recipients] to transfer the money demanded." *Id*.

Plaintiff became a customer of Chase in 2008, when an existing Washington Mutual checking account was converted into a Chase checking account. Am. Compl. ¶ 30. In 2010, Plaintiff obtained a Sapphire Preferred credit card from Chase. *Id.* ¶ 31. Plaintiff continued to be a customer until both accounts were closed in 2013. *Id.* ¶ 35. Plaintiff was released from prison in February 2019. *Id.* ¶ 20.

The Amended Complaint alleges Plaintiff became an authorized user on three different Chase credit cards ("the Authorized User Accounts") in October 2019. *Id.* ¶ 37. Plaintiff was removed from the Authorized User Accounts on April 17, 2020. *Id.* ¶ 43. Plaintiff opened a business checking account on February 4, 2020, which was closed on April 21, 2020. *Id.* ¶¶ 39, 45. In addition, Plaintiff opened an Amazon Prime Rewards Visa Signature Card ("Amazon Card") issued by Chase on April 20, 2020, which was closed on June 1, 2020 because "1) there was a 'rapid increase in revolving balances' and 2) there were 'too many requests for credit or reviews of credit.'" *Id.* ¶¶ 44, 48. The Amended Complaint also alleges Plaintiff was denied a "Chase Credit Card" on February 15, 2020 due to insufficient credit history. *Id*. ¶ 40. Finally, Plaintiff alleges Plaintiff's application for a Paycheck Protection Program loan ("PPP Application") was denied on April 17, 2020 with the statement, "After a recent review of your accounts, we have decided to end our relationship with you." *Id*. ¶ 42.

## III.    LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A plaintiff may "plead[] [itself] out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) (internal quotation marks omitted). When a plaintiff provides factual allegations in a complaint, "the defendant may use those facts to demonstrate that she is not entitled to relief." *Id.* (internal quotation marks omitted).

## IV.   ARGUMENT

### A.   Plaintiff Fails To State A Claim For RICO Conspiracy.

To state a claim under 18 U.S.C. § 1962(d), a plaintiff must allege a conspiracy to violate one of the substantive RICO subsections.[1] *See Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1092 (N.D. Ill. 2016) ("Plaintiff must establish that each Defendant joined an agreement to participate in 'an endeavor which, if completed, would satisfy all of the elements' of a substantive violation of RICO.") (citation omitted). Additionally, "the existence of an 'enterprise' and a 'pattern of racketeering' are elements that are fundamental to each of the RICO subsections," including RICO conspiracy. *Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 806 (N.D. Ill. 2014).

---

[1] While Plaintiff alleges the John Does and their co-conspirators conspired to violate all three of the substantive RICO subsections, 1962(a), (b), and (c), he does not plead facts to support his claim that anyone conspired to violate subsection (a), relating to using or investing income from racketeering activity into an enterprise, or (b), relating to using a pattern or racketing activity to acquire or maintain interest or control in an enterprise. His claim for conspiracy to violate subsection (c) relating to a person employed by or associated with an enterprise conducting the enterprise's affairs through a pattern of racketeering activity fails for the reasons discussed herein. The claim under subsection (d) therefore fails as well.

Plaintiff has not alleged a RICO enterprise. *See Rocha*, 15 F. Supp. 3d at 808 (dismissing both substantive and conspiracy RICO claims because "Plaintiffs have failed to allege a RICO enterprise"). This element includes the requirement that the defendant must "be separate and distinct from the enterprise." *Moore v. Fid. Fin. Servs., Inc.*, 949 F. Supp. 673, 678 (N.D. Ill. 1997). S*ee also Emery v. Am. Gen. Fin., Inc.*, 952 F. Supp. 602, 605–06 (N.D. Ill. 1997), *aff'd*, 134 F.3d 1321 (7th Cir. 1998) (Section 1962 claim fails when "RICO persons and enterprises are comprised of interrelated corporate units" and plaintiff fails to allege "that the RICO person was doing something more than merely conducting its own corporate affairs"). Where each defendant is "either a subsidiary or affiliated corporation or an individual who is named based on his activities as an agent of" a corporate defendant, a plaintiff has not alleged an enterprise which is distinct from the defendant and thus does not state a claim for a RICO violation. *Rocha*, 15 F. Supp. 3d at 807. *See also Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 647 (7th Cir. 1995) (internal quotation marks omitted) (noting cases rejecting attempts "to circumvent the distinctiveness requirement by alleging enterprises that are merely combinations of individuals or entities affiliated with a defendant corporation").

Here, Plaintiff's alleged enterprise consists of the so-called "Chase Underwriting Team," which he states "is comprised of John Does #1 through 4, and Co-Conspirators 1 through 10 …, each of whom are employed by Chase as underwriters." Am. Compl. ¶ 183. Thus, the alleged enterprise consists only of Chase's employees carrying out Chase's corporate affairs. This attempt to skirt the distinctiveness requirements and "fit a square peg in a round hole by squeezing garden-variety business disputes into [a] civil RICO action[]," *Rocha*, 15 F. Supp. 3d at 807, fails as a matter of law.

5

Plaintiff also has not alleged predicate acts. Plaintiff must allege a conspiracy to violate RICO "through the proposed commission of 'two or more predicate crimes' by any member of the conspiracy." *Menzies*. 197 F. Supp.3d at 1104 (quoting *United States v. Campione*, 942 F.2d 429, 436 (7th Cir. 1991)). "Racketeering activity" under the statute includes mail and wire fraud, which prohibit "deliberate fraud, 'where in order to get money or something else of monetizable value from someone you make a statement to him that you know to be misleading, expecting him to act upon it to your benefit and his detriment.'" *Bell Enterprises Venture v. Santanna Natural Gas Corp.*, No. 01 C 2212, 2002 WL 31269437, at *4 (N.D. Ill. Oct. 9, 2002) (citation omitted). The money or property that is the object of the scheme "must be property in the hands of the victim." *Cleveland v. United States*, 531 U.S. 12, 15 (2000). A complaint alleging fraud "must plead the circumstances of fraud in detail." *Haddad v. Am. Home Mortg. Servicing, Inc.*, No. 18 C 00731, 2019 WL 1425835, at *7 (N.D. Ill. Mar. 29, 2019) (internal quotation marks omitted). If a plaintiff "fails to allege reliance on any alleged misstatement or omission by mail or wire fraud," plaintiff cannot state a claim under § 1962. *Lentz v. Pan Am. Corp.*, Civ. A. No. 90-2181, 1991 WL 240739, at *5 (E.D. Penn. Nov. 12, 1991).

With respect to the purported predicate acts, Plaintiff alleges the John Does and co-conspirators sent him and others "letters containing fraudulent Statement[s] of Reasons" misrepresenting the reasons for which Chase denied an application or closed an account, allegedly for the purpose of "helping…Chase mitigate perceived losses." Am. Compl. ¶¶ 198-201. Plaintiff, however, fails to allege he was induced to provide any money or thing of monetizable value on the basis of the allegedly false adverse action letters, and therefore "cannot show that [Plaintiff] was injured by reason of the predicate act," even if Plaintiff otherwise had adequately alleged mail fraud. *Lentz*, 1991 WL 240739 at *5.

6

**B.** <u>Plaintiff Fails To State A Disparate Impact Claim Under ECOA.</u>

To state a disparate impact claim under ECOA, a plaintiff must: "(1) identify a specific practice or policy adopted by a defendant; (2) demonstrate a disparate impact on a protected group; and (3) show a causal relationship between the challenged practice and the alleged disparate impact." *Steele v. GE Money Bank*, No. 08 C 1880, 2009 WL 393860, at *3 (N.D. Ill. Feb. 17, 2009) (citing *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)).

1.    <u>Chase's Actual Policies Do Not Match Plaintiff's Allegations.</u>

Plaintiff's allegation that Chase has a policy of not conducting business with persons with felony convictions is pure speculation and directly contradicted by Chase's actual policies, which explicitly contemplate how Chase serves incarcerated persons. *See, e.g.*, Defendant's Extraordinary Life Event Policy and Incarcerated Individuals Policy, Declaration of Eric Bass, dated August 18, 2020 ("Bass Decl.") Ex. A, B, ECF No. 20.  On a motion to dismiss, a court can consider documents outside the pleadings where they are "documents to which the Complaint had referred, that the documents were concededly authentic, and that they were central to the plaintiffs' claim." *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).  Moreover, where facts in a document referenced in a complaint contradict general allegations in a complaint, such facts in the document control, and all inconsistent allegations can be rejected. *See Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1020 (7th Cir. 2013) (Feinerman, J. sitting by designation) ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence.")

Here, Plaintiff explicitly refers to Chase's policies.  Am. Compl. ¶ 175 (discussing the Incarcerated Individuals and Extraordinary Life Event policies).  Thus, the Court may consider these policies, which demonstrate Plaintiff's speculative allegation of a broad, "anti-felon" policy cannot be credited, even at this stage of the case.  These Chase policies demonstrate that Chase

will do business with convicted and/or incarcerated consumers. For example, the Incarcerated Individuals policy describes (1) how to maintain an existing relationship with a customer who becomes incarcerated via phone or an agent who has a Power of Attorney ("POA"); and (2) how to open an account with an incarcerated individual through a POA. *See* Bass Decl. Ex. B, ECF No. 20 at 2-3. Moreover, the Extraordinary Life Event policy notes a qualifying event providing a consumer with special dispensation in collections includes incarceration. *See* Bass Decl. Ex. A, ECF No. 20 at 1.

Under *Twombly and Iqbal*, Plaintiff has not plausibly alleged the existence of a policy – the first element of a disparate impact ECOA claim – to not bank with persons with felony convictions, and Count II should be denied on this basis alone. *See Twombly*, 550 U.S. at 556 ("[A] bare assertion of conspiracy will not suffice"); *Iqbal,* 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Plaintiff admits his claim is pure speculation, and Plaintiff has no basis to allege such a policy exists because he alleges the policy is "non-public." Am. Compl. ¶ 58. The allegations in the complaint based on "[a]necdotes from [s]imilarly-[s]ituated [f]elons" also fail to provide anything beyond speculation. *See Id.* ¶¶ 52-56. These allegations do not state these other unidentified individuals are part of a protected group, and they allege no basis for how these individuals would have knowledge of Defendant's supposed non-public policies. *Davis v. SPSS, Inc.*, 431 F. Supp. 2d 823, 827-28 (N.D. Ill. 2006) (dismissing complaint based on allegations of confidential witnesses because the complaint failed to allege such witnesses had any knowledge of the matter at issue).[2]

---

[2] Plaintiff's Exhibit B, nearly 300 pages of forum comments from anonymous third parties relaying unverified anecdotes of banks—including others besides Chase—purportedly denying or terminating customers' accounts on the basis of a felony conviction, does not salvage Plaintiff's complaint, and indeed, these complaints are wholly unsubstantiated. *See Porter v. Fairbanks Capital Corp.*, No. 01 C 9106, 2003 WL 21210115, at *7 (N.D. Ill. May 21, 2003) (refusing to

2.     Plaintiff Admits Chase Did Business with Him, Post-Felony,
       Demonstrating Plaintiff Cannot State a Claim.

Plaintiff's assertion Chase will not do business with persons with felony convictions is further disproven by his own admissions. Although Plaintiff alleges Chase violated ECOA by having in place a policy that excludes felons, Plaintiff admits he did business with Chase on multiple occasions notwithstanding his felony conviction. *Compare* Am. Compl. ¶ 1 (alleging Defendant "maintains and enforces policies of automatically excluding any person with a record of a felony conviction from accessing its checking and credit products") *with id*. ¶ 20 (alleging Plaintiff has a felony conviction); *id*. ¶¶ 37, 43 (admitting Plaintiff was added as an authorized user to three Chase credit cards post-conviction and remained an authorized user for approximately six months). *See also id*. ¶ 39 ("On or around February 4, 2020, Plaintiff successfully opened a Business Checking Account under his own name at Chase."); *id*. ¶¶ 44, 48 (admitting Plaintiff received an Amazon credit card issued by Chase, and the card was open for over a month).[3]

Courts "do not tolerate factual inconsistencies in a complaint." *Carmona v. Professionals, Inc.*, No. 15 C 8352, 2017 WL 1365590, at *3 (N.D. Ill. Apr. 14, 2017) (citation omitted). This is particularly true where a plaintiff alleges "conclusory facts that are inconsistent with detailed factual allegations in the body of a complaint." *Chicago Police Sergeants Ass'n v. City of Chicago*, No. 08-cv-4214, 2011 WL 2637203, at *7 (N.D. Ill. July 6, 2011). Plaintiff's admissions demonstrate Chase did, in fact, do business with Plaintiff notwithstanding his felony convictions,

---

consider exhibit consisting of "various complaints internet users have posted" where "[a] great portion of the material d[id] not even concern [defendant's] servicing practices, but the practices of other companies" and where the comments did refer to the defendant, there was "no indicia of reliability (the sources of many of the complaints about [defendant] are not even identified) and is irrelevant to the facts alleged in the complaint").

[3] The allegation of a "human error" in approving Plaintiff's application for the Amazon card does not cure this fatal contradiction, Am. Compl. ¶ 46, because Plaintiff is merely speculating, and Chase continued its relationship with Plaintiff after his felony conviction on other occasions.

and they contradict his assertion Chase has an "anti-felon" policy excluding people with felony convictions. Accordingly, Plaintiff cannot sustain his disparate impact claim. *See Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 650 (7th Cir. 2006) ("[A] party may plead itself out of court by . . . including factual allegations that establish an impenetrable defense to its claims.").

### 3. Plaintiff Fails To Allege He Is Part Of A Class Adversely Impacted.

Finally, even if Chase had a policy to not do business with felons (which it does not), Plaintiff's disparate impact claim fails because Plaintiff does not allege he is a member of any protected class disproportionately impacted. Rather, Plaintiff summarily alleges Chase has a policy of not doing business with felons, and this phantom policy disproportionately impacts "people of color." The phrase "people of color," however, encompasses people of numerous ethnic groups. Courts have recognized not all minority groups are similarly situated in all contexts. *See, e.g.*, *M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 576 n.27 (E.D.N.Y. 2010). And notably here, minority groups are not similarly situated with respect to felony conviction rates; thus, Plaintiff's lack of specificity is meaningful with respect to the viability of these allegations. Plaintiff tries to side-step this issue by framing his allegations as applying to "people of color," but Plaintiff cannot blithely aggregate data for all people of color in an attempt to arrive at statistics that fit his disparate impact claim. *See, e.g., Flores v. Hartford Police Dep't.*, No. H-79-411, 1981 WL 27040, at *16 (D. Conn., Feb. 17, 1981) ("Litigants may not pick and choose among various minorities to find numerical differences that happen to suit their cases.").

Specifically, Plaintiff has not pleaded he would be among the class of individuals adversely impacted by such a policy, as statistics from the Bureau of Justice Statistics[4] reveal incarceration

---

[4] This Court may take judicial notice of the publicly-available statistics provided by the Bureau of Justice Statistics. *See Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper.").

rates among minority groups vary significantly, a fundamental distinction that is lost by lumping together statistics for all people of color. For example, the Bureau of Justice Statistics found "[i]n 2017, the jail incarceration rate for blacks was more than 3 times the rate for whites and Hispanics, and more than 20 times the rate for Asians." *See* Bureau of Justice Statistics, *Prison and Jail Incarceration Rates Decreased by More Than 10% From 2007 to 2017*, https://www.bjs.gov/content/pub/press/p17ji17pr.pdf. Plaintiff cannot sustain a claim he would be disparately impacted by a policy adversely affecting individuals with felony convictions if Plaintiff does not allege the minority group to which he belongs. *See Forrester v. White*, 846 F.2d 29, 32 (7th Cir. 1988) (plaintiff "must prove that she was discriminated against through . . . disparate impact of a neutral practice on a protected group").

### C. Plaintiff Fails to State a Violation of ECOA Based on Chase's Alleged Failure to Provide a Statement of Reasons for Terminating the Relationship.

Plaintiff's allegations show Defendant provided him a statement of specific reasons for adverse actions relating to his PPP Application, the Chase Credit Card, and the Amazon Card.[5] A short explanation for the adverse action taken by a creditor is sufficient to discharge the creditor's ECOA notification obligations. *See Latour v. Deseret First Credit Union*, No. 2:19-cv-00450-JNP-PMW, 2020 WL 1326283, at *3 (D. Utah Feb. 26, 2020), *report and recommendation adopted*, No. 2:19-cv-450-JNP-PMW, 2020 WL 1325239 (D. Utah Mar. 20, 2020) (noting creditors must only provide reason for denial "without explanation"). For example, in *Latour*, the court noted "[w]hile a creditor must provide the principal reason for an adverse action, '[a] creditor need not describe how or why a factor adversely affected an applicant.'" 2020 WL 1326283, at

---

[5] In the First Amended Complaint, Plaintiff dropped his ECOA claim based on the closure of the accounts where he was an authorized user, as an authorized user is not an applicant for credit within the meaning or protections of ECOA. *See Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1189–91 (11th Cir. 2019). As a result, Chase is not further addressing it in this Motion.

\*3 (citing Consumer Financial Protection Bureau, Comment for 1002.9 – Notifications, Paragraph 9(b)(2) at ¶ 3). In that case, the defendant stated it was denying plaintiff's credit application based on his "[c]redit report data." *Id.* The court found this to be a sufficient reason, because the defendant "was not obligated to describe how or why a factor adversely affected Plaintiff. Defendant was simply required to state the principal reason for denial, without explanation, which it did." *Id.*

Here, Plaintiff's claim is not consistent with the Amended Complaint's allegations that Plaintiff promptly received an adverse action letter from Defendant "stating: 'After a recent review of your accounts, we have decided to end our relationship with you.'" Am. Compl. ¶ 42. This explanation for the denial of Plaintiff's PPP Application satisfies ECOA's requirement under the language of the statute and the relevant case law and is "all that the statute and the regulations upon which [Plaintiff] rel[ies] required." *Grant v. World Class Mortg. Corp.*, No. 89 C 3824, 1990 WL 19466, at \*2 (N.D. Ill. Feb. 20, 1990). By informing Plaintiff, after reviewing Plaintiff's accounts, Chase decided to terminate its relationship with Plaintiff, Chase provided Plaintiff with the principal reason for denying Plaintiff's application, and it had no obligation to explain its reasoning further. *See Latour*, 2020 WL 1326283, at \*3.

Moreover, Plaintiff's allegations reflect Chase fulfilled its obligations to provide Plaintiff with the principal reason for the denial of his Chase Credit Card application and the closure of his Amazon Card. Chase denied Plaintiff's application for a Chase Credit Card, explaining the denial was due to his "insufficient credit history." Am. Compl. ¶ 40. This explanation is specific enough to discharge Chase's obligations under ECOA. *See King v. Police & Fire Fed. Credit Union*, No. 16-6414, 2019 WL 2226049, at \*5 (E.D. Pa. May 22, 2019) (finding "limited credit history" was a specific enough reason to meet ECOA's requirements). In closing Plaintiff's Amazon Card,

Chase provided *two* specific reasons for its decision: "a 'rapid increase in revolving balances'" and "there were 'too many requests for credit or reviews of credit.'" Am. Compl. ¶ 48. Again, these statements are sufficient to inform Plaintiff of the principal reason for Chase's action. *See Wright v. SunTrust Bank*, No. 1:08cv568 (JCC), 2008 WL 3106884, at *2 (E.D. Va. Aug. 4, 2008) (finding "no facial error" in a statement of reasons which included "the high proportion of revolving balances to credit limits"); *Payne v. Diner's Club Int'l*, 696 F. Supp. 1153, 1157 (S.D. Ohio 1988) (finding a statement of reasons which included "[t]oo many requests for credit in the last 12 months in credit bureau report" to "compl[y] with the requirement of Regulation B"). Moreover, and fundamentally, "[a]n allegation that a statement of reasons is false does not give rise to ECOA *notice* liability." *Ruiz v. Samuel I. White, P.C.*, No. 1:09CV688, 2009 WL 10687930, at *4 (E.D. Va. Nov. 9, 2009). Chase's adverse action notification practices with respect to the challenged denials and terminations comply with ECOA's requirements. *See, e.g.*, *Higgins v. J.C. Penney, Inc.*, 630 F. Supp. 722, 723 (E.D. Mo. 1986) (finding notice stating reasons as "credit bureau report/delinquent history," "type of bank accounts," and "type of credit references" sufficient).

Further, because Chase provided Plaintiff with a statement of reasons for denying his PPP Application and Chase Credit Card Application and for closing his Amazon Card, Chase was under no further obligation to provide Plaintiff with a disclosure of his right to obtain a statement of reasons. The ECOA makes clear a creditor must provide *either* a statement of reasons *or* a disclosure of the applicant's right to such a statement, and by the terms of the statute, a creditor is not required to provide both. *See* 15 U.S.C. § 1691(d)(2).

13

D.      **Plaintiff Fails To State A Claim Under The Illinois Consumer Fraud And
        Deceptive Business Practices Act.**

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits

"unfair methods of competition and unfair or deceptive acts or practices."  815 Ill. Comp. Stat.

Ann. 505/2.  In addition to his failure to sufficiently allege the elements of this claim, Plaintiff's

claims regarding unfair methods of competition or unfair or deceptive acts or practices are based

on alleged policies Chase has demonstrated do not exist by virtue of the documents referenced in

the Amended Complaint.  As explained above, *see* Supra Section IV.B.1-2, documents cited by

Plaintiff in his Amended Complaint demonstrate Chase does not have the purported "anti-felon

policy," and Plaintiff's ICFA claim fails for this reason.

Plaintiff's ICFA claim also fails for additional reasons.  A claim under the unfairness prong

of ICFA considers whether an alleged practice is "immoral, unethical, oppressive or

unscrupulous."  *Horist v. Sudler & Co.*, 941 F.3d 274, 280 (7th Cir. 2019) (citation omitted).  This

factor only weighs in favor of a finding of unfairness if the alleged conduct "imposes a lack of

meaningful choice or an unreasonable burden on the consumer."  *Stonecrafters, Inc. v. Foxfire

Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 616 (N.D. Ill. 2009) (internal quotation marks

omitted).  Though Plaintiff alludes to this factor by using the term "immoral," Am. Compl. ¶ 240,

nowhere does he allege a "lack of meaningful choice or an unreasonable burden." *Stonecrafters*,

633 F. Supp. 2d. at 616.  *See also Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E.2d 602, 608 (Ill.

App. Ct. 1996) (unfair conduct must "be so oppressive as to leave the consumer with little

alternative but to submit").  Chase declining Plaintiff's application for credit or closing his account

did not leave him without "meaningful choice," as he was free to apply for credit from any other

lender, and any burden placed on him by denials or account closures does not rise to the level

required to find practices "unreasonable."  *See Stonecrafters*, 633 F. Supp. 2d. at 616 (finding

14

defendant's sending of unsolicited faxes did not support ICFA unfairness claim because the conduct was not "unreasonable" and so a court "would be hard pressed to conclude" it was "immoral, unethical, oppressive, or unscrupulous").

Plaintiff's ICFA claim regarding deception is similarly deficient. Plaintiff must satisfy five elements to prove an ICFA deceptive acts or practices claim: "(1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005). "If claims under the Act assert fraud, they must be pled with particularity." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 954 (N.D. Ill. 2016) (internal quotation marks omitted). "[I]n a case alleging deception under the Act, it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show he or she was, 'in some manner, deceived' by the misrepresentation." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) (internal citation omitted). Though Plaintiff alleges Chase's adverse action letters were "designed to lead him to believe that he [had] negative account history, poor credit history, or unusually high expenditures," Am. Compl. ¶ 239, nowhere does he allege he was *actually* deceived by them. Therefore, any alleged damages could not have been proximately caused by Chase. *See Powell v. Pentagon Fed. Credit Union*, No. 10 CV 785, 2010 WL 3732195, at *5 (N.D. Ill. Sept. 17, 2010) (plaintiff who alleged deceptive act was "meant by Defendant to induce [plaintiff] to accept the closure of his account 'without dispute and [to] forego hidden consumer protection claims'" failed to allege proximate cause as he "was clearly not deceived into accepting the closure without dispute as he has brought suit against Defendant over the very issue.") (citation omitted).

15

## V. CONCLUSION

For the forgoing reasons, Plaintiff's First Amended Complaint should be dismissed with

prejudice.

Dated: September 29, 2020                    Respectfully submitted:

*/s/ Jonice Gray Tucker*
Jonice Gray Tucker (*pro hac vice*)
Valerie L. Hletko (Ill. Bar No. 6323429)
BUCKLEY LLP
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 349-8000 (Telephone)
(202) 349-8080 (Fax)
jtucker@buckleyfirm.com
vhletko@buckleyfirm.com

Scott Sakiyama (Ill. Bar No. 6302903)
BUCKLEY LLP
353 N. Clark Street, Suite 3600
Chicago, IL 60654
(312) 924-9800 (Telephone)
(312) 924-9899 (Fax)
ssakiyama@buckleyfirm.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2020 I caused a true and correct copy of the foregoing to be served upon plaintiff by electronic filing for ECF users.

By:     */s/ Jonice Gray Tucker*
        Attorney for Defendant